**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DIGITAL FREEDOM., | |
| Plaintiff, | CIVIL ACTION NO. 3:06-CV-52 |
| v. | (JUDGE CAPUTO) |
| COMMONWEALTH TELEPHONE COMPANY, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court is Plaintiff Digital Freedom's Combined Motion For Temporary Restraining Order And Preliminary Injunction. (Doc.1) For the following reasons, the Court finds that there is no jurisdiction over this matter. Accordingly, Plaintiff's motion for a preliminary junction will be denied without prejudice.

## BACKGROUND

Digital Freedom, LLC ("Digital") is an internet service provider ("ISP") providing internet service capabilities to the residents of the 570 dialing area in the Northeastern Pennsylvania area. (Doc. 2 at 2)  Digital uses the telephone lines and switching equipment of the Defendant, Commonwealth Telephone Company ("CTC"), to provide access to the internet for its customers. (*Id.*)  In November, 2005, Digital obtained from Blue Frog, Inc., a New York company, an 800 toll free number (800-279-7920) number, which uses the telephone lines and switching equipments of CTC. (*Id.*)  Digital contracted directly with CTC up until May, 2005 when Digital switched to Dial Assurance and then to Blue Frog. (*Id.*)  CTC blocked access to the internet for this 800 number on December 8, 2005. (*Id.*)  Digital acquired two additional 800 toll free numbers (866-951-9105, 866-252-7200) from VIAPops,

Inc. , an Iowa company. (Doc. 2 at 3)  CTC blocked access to the internet for all three 800 numbers on December 14, 2005. (*Id.*)  On December 29, 2005 Digital was informed by CTC that these three numbers will not be unblocked. (*Id.*)

Digital filed a Combined Motion For Temporary Restraining Order And Preliminary Injunction (Doc.1) on January 9, 2006, alleging that it is losing customers as it does not have 800 numbers to provide to its customers to access the internet.  (Doc. 2 at 3) The Court conducted a hearing on the motion for a temporary restraining order ("TRO") on January 9, 2006.  (Docs. 5,6)  The Court granted a TRO that was to commence upon posting of a bond and remain active until the date of the preliminary injunction ("PI") hearing.  (Doc. 8)  The Court conducted a PI hearing on January 17, 2006, at which time, the Court asked both sides to file supplemental briefs on the issue of jurisdiction. (Doc. 13).  Both parties did so and this matter is now ripe for disposition.

## DISCUSSION

Digital seeks a PI requiring CTC to unblock the three 800 toll free numbers used by Digital. (Doc. 2 at 4)  To obtain a PI, plaintiff must establish:  (1) a reasonable likelihood of success on the merits; (2) that irreparable harm will result if the Court denies relief; (3) that even greater harm will not befall Defendant if the Court should grant relief; and (4) that granting preliminary relief will be in the public interest. *Forum For Academic and Institutional Rights v. Rumsfield*, 390 F.3d 219, 228 (3d Cir. 2004).

Before going to the merits of whether Digital has met its burden of establishing these four factors, the Court must address whether it has jurisdiction over this matter.  For the following reasons, the Court does not have jurisdiction over this matter.

2

**1.      Jurisdiction under 47 U.S.C.A. §§ 251-276**

Digital argues that the Court has subject matter jurisdiction under 18 U.S.C. § 1331 and 47 U.S.C.A. §§ 251-276. (Doc. 2 at 4-7)  Specifically, Digital directs the Court to 47 U.S.C.A. § 252(e)(6) which states:

> **(6) Review of State commission actions**
>
> In a case in which a State fails to act as described in paragraph (5), the proceeding by the Commission under such paragraph and any judicial review of the Commission's actions shall be the exclusive remedies for a State commission's failure to act.  In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

(West 2004).   Digital argues that the Court has jurisdiction over this matter because the case turns on the issue of interconnection sought by Digital to the network elements of CTC and thus, it is a federal question matter.  (Doc. 2 at 7)   Digital concedes that the law is not clear as to the proper jurisdiction over claims under the Telecommunication Act of 1996 ("Act") for matters not related to interconnection agreements.  Even so, Digital argues that the Court has jurisdiction over this matter and cites to two cases in support of its position.

The first case, *MCI Worldcom, Inc. v. Pennsylvania Pub. Util. Comm'n,* ruled that jurisdiction over state commission decisions under the Act lies exclusively in federal courts. 577 Pa. 294, 299 (Pa. 2004).  The Supreme Court of Pennsylvania acknowledged that Congress has not been explicit as to the question of proper jurisdiction for review of other claims, aside from appeals involving state commission's approval or rejection of an interconnection agreement, under the Act.  *Id.* at 307.  Citing authority which support federal

3

court jurisdiction, the Supreme Court of Pennsylvania concluded that federal courts have jurisdiction over state commission's determinations involving interconnection agreements which arise under Section 252(e)(6) regardless of whether they involve approval or rejection on appeal. *Id.* The second case, *MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania,* is offered for the same proposition. 271 F. 3d 491, 497 (3d Cir. 2001)(holding that "District Court had jurisdiction to review the interconnection agreement pursuant to 47 U.S.C. § 252(e)(6)").

Digital wants the Court to base jurisdiction under the Act based on these cases. CTC agrees that the Court has jurisdiction over review of interconnection agreements under the Act but points out that Digital, as an ISP, is not entitled to obtain interconnection under the Act. (Doc. 11 at 6-7) The Court agrees that Section 252(e)(6) gives federal court jurisdiction over state commission's decisions on interconnection agreements. This, however, cannot be read to give the Court jurisdiction over this case since it is not only questionable as to whether the issue is about interconnection agreements, but there is also an absence of any state commission determination on this matter. Furthermore, upon the absence of state commission action, the Federal Communication's Commission ("FCC") is to act in its place. 47 U.S.C.A. § 252(e)(5). Hence, the Court cannot agree with Digital that "[p]lainly, jurisdiction over interconnection under the Telecommunication Act of 1996 is with this Honorable Court." (Doc. 2 at 7)

**2.      Primary Jurisdiction of the Agencies**

At the conclusion of the PI hearing on January 17, 2006, the Court asked for further briefing on the narrow topic of jurisdiction from both parties. (Doc. 13) Digital argues in their brief that the FCC has jurisdiction over communication traffic of an ISP and that the use of

4

an 800 toll free number by Digital comes under the ISP Remand Order of the FCC. (Doc. 17-1 at 2-3) CTC disagrees with Digital and argues that access charges for toll services are excluded from the FCC's analysis of reciprocal compensation for ISP bound traffic. (Doc.16 at 9) Furthermore, CTC argues that it is entitled to just and reasonable compensation for the intrastate access services it provides, pursuant to its intrastate access tariff under the Pa. Public Utility Company ("PUC") Tariff No. 26. (*Id.*) The Court believes that both parties could be right for jurisdictional purposes as the matter involves a mix of issues. Hence, either the FCC or the PUC, could have jurisdiction over this matter depending on where the parties decide to bring their claim. What is clear is that under the primary jurisdiction doctrine, this Court does not have jurisdiction and this matter is to be deferred to the appropriate agencies.

Digital has chosen to use a toll-free number with an 0110 Carrier Identification Code ("CIC") to allow its customers to call into its internet access service. This departs from the traditional use of local lines to allow customers to access the ISP's internet service. Digital states that the "FCC was not explicit in the ISP Remand Order, or any other order for that matter, with regard to the appropriate intercarrier compensation mechanism for ISP-bound calls that were not clearly dialed as local calls." (Doc. 17-1 at 9) CTC argues, however, that it is not arguing for reciprocal compensation nor that the traffic is local; only that it should be given access revenue for the intrastate toll traffic. (Doc. 19 at 3) The circumstance remains, however, that the toll traffic, which incurs toll access charges, is not being used by a normal carrier or/and an end-user but by an ISP. The subtle shades of gray that this dispute involves requires an expertise that is beyond that of this Court.

This is a case where Digital is bringing a claim for interconnection of services. Neither Digital nor CTC have brought claims to recover any type of damages or to recover access charges. CTC's reason for the disconnection is that it is due reasonable compensation, but they do not cite to any violation of the Act, only that the Pa PUC Tariff No. 26 applies to this case. A resolution of this dispute turns on what charges are applicable when an ISP uses a toll free number to allow its customer access to its internet services. Both parties agree that this issue has not been directly addressed by the FCC and both parties differ on what should be the applicable charge: Digital argues that FCC's rule on intercarrier reciprocal compensation applies; and CTC argues that PaPUC tariffs for intrastate toll free access charges apply.

> "Primary jurisdiction 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of a claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.' In contrast, when the legislature provides an agency with 'exclusive primary jurisdiction,' it preempts the courts' original jurisdiction over the subject matter."

*MCI Telecomm. Corp. v. Teleconcepts, Inc.,* 71 F. 3d 1086, 1103 (3d Cir. 1995) (quoting *Great Bay Hotel & Casino v. Tose,* 34 F.3d 1227, 1230 n.5 (3d Cir. 1994)(citations omitted)). The Court is of opinion that the current matter in dispute is "a complex matter requiring special competence, with which the judge or jury would not or could not be familiar" and as such "the proper procedure is for the court to refer the matter to the appropriate agency." *MCI Telecomm. Corp.,* 71 F. 3d at 1104 (quoting *Elkin v. Bell Tel. Co. of Pa.,* 420 A.2d 371, 377 (Pa. 1980)); *Aronson v. IDT Corp., No. 02-1706, 2003 U.S. Dist. LEXIS 6659,* at *12 (W. D. Pa. April 3, 2003) (citations omitted) ("As explained by the Supreme Court of the United

States, under the doctrine of primary jurisdiction, referral to an administrative agency is appropriate if an action appears to involve technical or policy considerations beyond the trial court's ordinary competence and within the agency's field of expertise.")

While there is no formula to govern when primary jurisdiction should apply, some factors considered are:

> (1) technical or policy considerations within an agency's specialized knowledge and insight gained through experience; (2) uniformity and consistency in matters over which an agency has power to adjudicate; and (3) the agency's administrative discretion to affect regulatory policy in its purview.

*Paetec Communications, Inc. v. Core Comm-ATX, Inc.,* No. 01-5298, 2002 U.S. Dist. LEXIS 18865, at *4-5 (E. D. Pa. Oct. 3, 2002) (citations omitted). While the Act of 1934 divided the line between interstate and intrastate jurisdiction, with the FCC having jurisdiction over the former and the states over the latter, the Act of 1996 did away with this type of bright line distinction. What lies within the jurisdiction of the FCC versus the state is contentious. *See generally, AT & T Corp. v. Iowa Utils. Bd.,* 119 S. Ct. 721 (1999) (interpreting the 1996 Act against that of the 1934 Act in defining FCC jurisdiction versus state jurisdiction on certain matters). The case before the Court contains an intermingling of issues that arguably falls under the respective expertise of the FCC and the PUC. This dispute arguably falls under the jurisdiction of either or both agencies. Ultimately, it would depend on which party decides to bring a suit before which agency based on which alleged violations.

    **a.**    **State Agency: PUC**

According to CTC, this is an issue of toll charges and it is a matter for the PUC to determine. CTC argues that Digital's use of CTC's network to originate toll free calls is an

exchange access service according to 47 U.S.C. § 153(40). (Doc. 16 at 4) CTC contends that under the FCC rules, toll free service is an interexchange service in which subscribers agree in advance to pay for all calls made to them using a pre-designated toll free telephone number. (Doc. 16 at 3) (citing *In the Matter of Toll Free Service Access Codes; Database Services Management, Inc., Petition for Declaratory Ruling; Beehive Telephone Company Petition for Declaratory Ruling, Fifth Report and Order,* CC Docket No. 95-155, 15 FCC Rcd 11939, 11941 (2000)). CTC argues that this makes the toll free number that Digital utilizes, an intrastate toll service involving interexchange carriers rather than a local call as Digital argues. (Doc. 16 at 3)

CTC further argues that since all the calls are originated and terminated within the Northeastern Pennsylvania ("NEPA") Local Access Transportation Area ("LATA"), CTC's intrastate access tariff rates should apply. CTC contends that according to the applicable PaPUC Tariff No. 26, § 6.1.3(c)(2), toll free service generate access charges. (Doc. 16 at 4) In short, CTC's position is that "Digital is using an intrastate service [a toll free number] to provide internet access to its customers which generates access charges for which CTC is entitled to just and reasonable compensation." (Doc.19 at 2.)

CTC argues that Digital could use a toll free number to provide access to its customers if it is used properly. CTC explains that it is not the use of a toll free number but the misuse of the generic 0110 CIC that prevents CTC from obtaining access revenue for the toll traffic. Hence, CTC is not arguing about the toll free call but the access revenue generated by the toll call. (Doc. 5 at 7) CTC argues that the 0110 CIC that Digital's toll free numbers use, dial down to a CLEC in Level 3, which does not charge for the call. CTC explains that when an end user dials a toll free number, access charges would be billed to

8

and paid by the relevant interexchange carrier that handled the call based on the CIC that was returned when the 800 database was queried. But the 0110 CIC does not identify a carrier, hence, despite generation of access revenue, CTC is not compensated for the use of its network. (Doc. 16 at 5) The toll free number that Digital is using rings down to another number, sometimes local and sometimes toll depending on the caller's location. (Doc. 16 at 11)

Digital argues that use of toll free number does not constitute a form of toll telephone service as CTC argues. Digital contends that it does not directly receive the internet calls from its customers, and the carrier that terminates the calls can be identified by the SMS/800 data base as a CLEC, Level 3, who does not charges tolls for this call. (Doc. 18 at 3) Hence, Digital argues against CTC who states that the 0110 CIC does not identify a carrier. Digital also argues that "intraLATA 800 calls, making use of the 0110 CIC, are not the same as 800 calls made through an interexchange carrier and are not necessarily subject to access charges." (Doc. 17-1 at 10) Additionally, Digital explains that when they used a toll free number with 0110 CIC that was provided by Dial Assurance through CTSI, CTC allowed them to provide the services to Digital at rates not governed by the Pa PUC. (Doc. 17-1 at 8-9) Hence, Digital argues that the toll free number acquired from Blue Frog, another CLEC, should be treated the same. (Doc. 17-1 at 9)

"[I]ssues that implicate a utility's tariff are deemed to be within the special expertise of the PUC." *MCI Telecomm. Corp.,* 71 F. 3d at 1104. In differentiating which issues are within the primary jurisdiction of the PUC or not, the Third Circuit Court of Appeals in *MCI Telecomm. Corp.* looked at numerous cases, two of which are helpful to this Court. In *Elkin v. Bell Tel. Co. of Pa.,* Bell Telephone Company of Pa.'s failure to furnish its customers with

reasonable, rapid and efficient service with respect to three-wide area telephone services was considered to fall within the PUC's area of expertise. 420 A. 2d at 373, 377. In another case, *Morrow v. Bell Tel. Co. of Pa.*, a challenge to PUC's rates relating to toll charges were considered to be within PUC's primary jurisdiction. 479 A. 2d 548, 551-552 (Pa. Super. Ct. 1984).

Essentially, disputes related to a telephone company's performance under its tariff falls under the primary jurisdiction of the PUC. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F. 3d at 1104-05. In the present case, CTC has blocked access to the toll free numbers because it believed that these numbers that Digital was using incurred toll access charges according to its filed tariff, PaPUC Tariff No. 26. Challenges to CTC's assessment of the charges should be brought to the PUC. *ASAP Paging, Inc. v. Centurytel of San Marcos, Inc.*, No. 04-50838, 2005 U.S. App. LEXIS 12642, at *7 (5th Cir. June 24, 2005) (citations omitted) ("Under the 'filed rate doctrine' (also sometimes called the 'filed tariff doctrine'), when a carrier is required to file a tariff of its charges with a regulatory body, the charges filed are the only charges that the carrier may lawfully assess.").

In *ASAP Paging, Inc.*, CenturyTel, an incumbent local telephone company started to charge calls to the numbers owned by ASAP, an ISP, when it assessed these calls as toll rather than local calls. 2005 U.S. App. LEXIS at *3. ASAP brought charges to the PUC, asking the commission to order CenturyTel to stop assessing toll charges on the calls. *Id.* PUC denied ASAP's request. *Id.* That case turned on whether calls to the ISP should be classified as local or toll for application of the tariff. *Id* at *7. The Fifth Circuit Court of Appeals in that case ruled that :

10

> There is no indication in the record that CenturyTel's filed tariff directly addresses which rate should be applied to calls to numbers such as ASAP's. Whether CenturyTel is following its tariff such that the filed rate doctrine would apply therefore depends on whether the PUC's interpretation of CenturyTel's tariff survives review by the state appellate courts and the FCC.

*Id.* Similarly, CTC argues by analogy that since local state tariffs apply when local services are used by ISPs, state access tariff should apply when state access services are used. (Doc.16 at 5) CTC blocked access to Digital's toll free numbers based on this premise. Any challenges to this should be brought to the PUC.

### b. Federal Agency: FCC

Alternatively, according to Digital, this is an issue of intercarrier compensation and is a matter for the FCC to determine. Digital argues that the FCC has jurisdiction over communications of an ISP and hence, the use of the toll free numbers by Digital should be subjected to the tariffs and policies of the FCC. (Doc. 17-1 at 3) ("The FCC concludes that traffic delivered to an ISP is predominantly interstate access traffic subject to Section 201 of the Telecommunications Act of 1996.") Digital contends that since at least two carriers are involved in providing the toll free numbers, FCC's intercarrier compensation rule should apply. (Doc. 17-1 at 2) Digital reasons that the end to end analysis rather than the two call analysis applies in this situation and thus, the jurisdiction of the FCC ends with the customers of Digital and hence, the use of the toll free numbers by Digital's customers fall under the FCC rather than the Pa PUC. (Doc. 17-1 at 7) Digital argues that the billing arrangement for Digital's use of the toll free number by its customers should be determined by the FCC under Section 201 as it falls under intercarrier compensation for ISP bound traffic. (Doc. 17-1 at 7-8)

11

CTC argues that the rule for intercarrier compensation for ISP bound traffic do not apply to Digital as (1) Digital is not a carrier and (2) Digital traffic is access rather than local service. (Doc. 16 at 9) CTC contends that the FCC rules were not meant to apply to unusual toll free method as used by Digital. (Doc. 16 at 5) CTC explains that the FCC's imposed rate of $.0007 is not a limitation on the rates that ISP pays telephone companies but rather, a limitation on the rates that one LEC can charge another LEC for ISP bound traffic that is exchanged between the two. (Doc. 16 at 5) CTC concludes by analogy that since local state tariffs apply when local services are used by ISPs, state access tariff should apply when state access services are used. (Doc.16 at 5)

CTC argues that according to *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996; Inter-Carrier Compensation for ISP-Bound Traffic,* Order on Remand and Report and Order, CC Dockets 96-98, 99-68, 16 FCC Rcd. 9151 (2001), ¶ 38, fn. 151, if Digital was using local numbers, the applicable rate would be intrastate business tariffs, but that since Digital used a toll free number, thereby using an exchange access service, the relevant CTC tariff is the PaPUC Tariff No. 26 intrastate access tariff. (Doc. 16 at 7) Furthermore, CTC contends that applying the FCC's analysis to the ISP's use of an intrastate service rather than a local service would result in a determination that this traffic is intrastate access traffic. (Doc. 16 at 9) In conclusion, CTC is asking the Court to rule that access charges for toll services are excluded from the FCC's analysis of reciprocal compensation for ISP bound traffic and hence, CTC is entitled to compensation for the intrastate access services it provided to Digital according to the PaPUC Tariff No. 26 intrastate access tariff. The Court lacks the expertise to rule on either of these questions. The first one is for the FCC to determine and the latter, for the PUC. "The establishment of appropriate payment rates under a regulatory scheme is a

paradigmatic subject of agency expertise. Here, 'the FCC is the expert regulatory agency on affairs relating to telecommunications carriers.'" *Phone-Tel Communications, Inc. v. AT&T Corp.,* No. 98-6486, 2000 U.S. Dist. LEXIS 8221, at *9-10 (E. D. Pa. June 12, 2000) (citations omitted). As previously noted, Digital points out that the "FCC was not explicit in the ISP Remand Order, or any other order for that matter, with regard to the appropriate intercarrier compensation mechanism for ISP-bound calls that were not clearly dialed as local calls." (Doc. 17-1 at 9)

Digital further points out that ISP compensation "appears to be the subject of an open FCC Docket (CC Docket 01-92, Developing a Unified Intercarrier Compensation Regime)." (Doc. 17-1 at 9.) Digital informs the Court that "while the original Docket has been open for over four years, a Further Notice of Proposed Rulemaking was released on March 3, 2005 for this Docket and a final decision is likely this year." (Doc. 17-1 at 9-10.) In this Further Notice, the FCC asks for input from the telecommunication industries to resolve the distortion created by the current intercarrier rate making factors, which currently are: "(1) the type of traffic at issue; (2) the types of carriers involved; and (3) the end points of the communication . . . ." (Doc. 17-1 at 10). Digital reasons that "while this creates uncertainty as to the appropriate level of intercarrier compensation for these calls, it does not change the fact that there is a general duty to interconnect and carry these calls." (Doc.17 at 10) As previously noted, interconnection and compensation require different analysis. Either way, however, the Court needs to defer this matter. In this narrow analysis of intercarrier compensation of ISPs, the Court needs to defer to the FCC.

CTC argues that this issue should be resolved on the current law rather than what FCC has on open docket. (Doc.19 at 5) As CTC interprets the current law, "the FCC made clear in its analysis that when the ISP uses the typical method of providing access to its

13

customers (using local facilities and local numbers), the internet service provider is to purchase those services from the local exchange carrier's local rate tariff. Therefore, the FCC's analysis is clear that state charges are applicable when the ISP uses local facilities. If the ISP chooses to use an alternative method of providing services to its customers that utilizes intrastate services (such as toll-free 800 service as opposed to local service), intrastate access tariffs should be applied." (Doc. 19 at 5)

While the FCC states that purchasing local services to provide internet services is typical, FCC has never stated that it is the only way of providing access. Where the FCC has left open an area to be decided, the court should refrain from ruling as "there is a 'substantial danger' of inconsistent ruling if the court were to address the issue simultaneously with the FCC." *Phone-Tel Communications, Inc.*, 2000 U.S. Dist. LEXIS 8221, at *15. (citations omitted).

## CONCLUSION

Digital argues that under 47 U.S.C. §§ 251-276, the main issue is about interconnection and thus, this Court has jurisdiction. Even if Digital is correct, according to 47 U.S.C. § 252 (e)(5)-(6), prior to a federal district court taking such a case, it is brought and ruled on by either of both of the PUC and FCC. Hence, this Court does not have jurisdiction over this matter at this time.

Alternatively, if Digital is asking the Court to rule that CTC has wrongfully assessed charges against Digital's usage of the three toll free number and that CTC's blockage of these numbers are erroneous, the doctrine of primary jurisdiction dictates that such challenges should be brought to the PUC and/or the FCC depending on the respective parties' decisions.

The Court does not have jurisdiction over this matter. Therefore, Plaintiff's motion

for a preliminary injunction will be denied without prejudice.

An appropriate Order shall follow. [1]

March 20, 2006                                                              /s/ A. Richard Caputo
Date                                                                                A. Richard Caputo
                                                                                       United States District Judge

---

[1] The Court will assume that the parties will proceed before the FCC and/or the PUC and a direct order will not be entered for that purpose. *Audiotext Int'l, Ltd. v. MCI Worldcom Communications, Inc.,* No.00-3982, 2001 U.S. Dist. LEXIS 20381, at *18, n.11 (E. D. Pa. Dec.11, 2001) (explaining that an order directing parties to proceed before the FCC or to direct the FCC on how to proceed are more of an exception than the rule).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DIGITAL FREEDOM., | |
| Plaintiff, | CIVIL ACTION NO. 3:06-CV-52 |
| v. | (JUDGE CAPUTO) |
| COMMONWEALTH TELEPHONE COMPANY, | |
| Defendant. | |

## **ORDER**

**NOW**, this   20th   day of March, 2006, **IT IS HEREBY ORDERED THAT** Plaintiff Digital Freedom's Combined Motion For Temporary Restraining Order And Preliminary Injunction.  (Doc.1) is **DENIED** without prejudice**.**

 /s/ A. Richard Caputo
 A. Richard Caputo
 United States District Judge